Filed 9/30/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JONATHAN R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JONATHAN R., <br><br> Defendant and Appellant. | A145238 <br><br> (Contra Costa County <br> Super. Ct. No. J1500271) |

After Jonathan R. (minor) stabbed another young man during a brawl, he was alleged in a juvenile wardship petition to have violated Penal Code section 245, subdivision (a)(1), assault with a deadly weapon other than a firearm, and subdivision (a)(4), assault by force likely to produce great bodily injury. The juvenile court found true both violations, as well as enhancement allegations under both violations of personal use of a deadly weapon and infliction of great bodily injury. Defendant contends he cannot be found to have committed violations of both subdivisions of section 245 because the two subdivisions merely specify different ways of committing a single offense. He also argues the deadly weapon enhancement under subdivision (a)(1) is improper because use of such a weapon is an element of the crime and objects to the imposition of an electronic search probation condition.

We conclude the minor's argument that the crimes specified in subdivision (a)(1) and (4) of Penal Code section 245 are not separate offenses is untenable in light of the

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.B. and II.C.

Supreme Court's decision in *People v. Gonzalez* (2014) 60 Cal.4th 533 (*Gonzalez*). Nonetheless, we agree with the minor that he cannot be found to have violated both offenses because we find the offense specified in subdivision (a)(4), assault by force likely to produce great bodily injury, is necessarily included within the offense specified in subdivision (a)(1), assault with a deadly weapon or instrument other than a firearm. We also find merit in the minor's other arguments. We therefore vacate the juvenile court's findings with respect to section 245, subdivision (a)(4) and strike the deadly weapon use enhancement under the violation of subdivision (a)(1). In addition, we direct the entry of a narrower electronic search condition and remand for recalculation of the minor's maximum term of confinement and restitution fine.

## I. BACKGROUND

In an amended juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a), the minor was alleged to have violated Penal Code[1] section 245, subdivision (a)(1), assault with a deadly weapon other than a firearm (count one), and section 245, subdivision (a)(4), assault by force likely to produce great bodily injury (count two). Both counts also alleged the minor used a deadly weapon, a knife, and inflicted great bodily injury on the victim. (§§ 12022, subd. (b)(1), 12022.7, subd. (a).)

Testimony at the contested jurisdictional hearing established that the minor stabbed another young man in the abdomen during a brawl, using a folding pocket knife with a blade approximately three to four inches long. The resulting injury required a five-day hospital stay.

The juvenile court found true both counts of the petition, as well as all enhancement allegations. The minor was adjudged a ward of the court and committed to the county's Youthful Offender Treatment Program for a maximum period of nine years or until age 21. Among the probation conditions imposed was one requiring the minor to

---

[1] All further statutory references are to the Penal Code.

submit his property to a warrantless search at any time, "including any electronic device & cell phone & access codes."

## II. DISCUSSION

The minor contends the juvenile court erred in convicting him of both subdivision (a)(1) and (4) of section 245 and argues the enhancement alleging use of a knife under count one should be stricken because use of a deadly weapon is an element of the crime of assault with a deadly weapon. He also challenges the imposition of the probation condition permitting warrantless search of his electronic devices.

**A.** *Multiple Violations of Section 245*

**1.** *Governing Law*

The statute governing the crime of aggravated assault, section 245, has undergone a gradual expansion over its history. For much of the first half of the last century, the section read, " 'Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison . . . , or in a county jail . . . , or by fine . . . , or by both such fine and imprisonment.' " (*In re Mosley* (1970) 1 Cal.3d 913, 918, fn. 4; Stats. 1933, ch. 847, § 1, p. 2216.) In 1961, this provision was designated subdivision (a), and a subdivision (b) was added separately criminalizing aggravated assault against a peace officer. (Stats. 1961, ch. 802, § 1, p. 2067.) In addition to other statutory changes to section 245 not pertinent here, subdivision (a) was later split into two parts, dividing the crime into (1) assault with a deadly weapon other than a firearm or by force likely to produce great bodily injury, and (2) assault with a firearm. The latter imposed the new requirement of a minimum six-month jail term. (Stats. 1982, ch. 136, § 1, p. 437; see *People v. Milward* (2011) 52 Cal.4th 580, 585.) In 1989, subdivision (a)(3) was added to section 245, specifying the crime of assault with a machinegun or assault weapon, which carried a mandatory prison term, unlike the other provisions of subdivision (a). (Stats. 1989, ch. 18, § 1, p. 52.) Finally, in 2011, subdivision (a)(1) was split into the crimes of assault with a deadly weapon other than a firearm, which remained subdivision (a)(1), and assault by force likely to produce great

3

bodily injury, which became subdivision (a)(4).  Although stated in separate subdivisions, the two crimes continued to carry the same range of punishments, which were separately specified in each subdivision.  (Stats. 2011, ch. 183, § 1, p. 2394.)  As a result of these changes, subdivision (a) of section 245 now specifies four different crimes, each with its own elements and range of punishments.[2]

It has long been accepted that, in general terms, "a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct.  'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." [Citations.]'  [Citation.]  Section 954 generally permits multiple conviction.  Section 654 is its counterpart concerning punishment.  It prohibits multiple punishment for the same 'act or omission.' " (*People v. Reed* (2006) 38 Cal.4th 1224, 1226–1227 (*Reed*).)  This general rule is subject to "[a] judicially created exception," which " 'prohibits multiple convictions based on necessarily included offenses.'  [Citations.]  '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser

---

[2] Section 245, subdivision (a) now reads:

"(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

"(2) Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment.

"(3) Any person who commits an assault upon the person of another with a machinegun, as defined in Section 16880, or an assault weapon, as defined in Section 30510 or 30515, or a 50 BMG rifle, as defined in Section 30530, shall be punished by imprisonment in the state prison for 4, 8, or 12 years.

"(4) Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

included offense within the former.' " (*Id.* at p. 1227.) Many cases have found that only a single offense can arise from a single statute, but that has never been a hard-and-fast rule.[3]

The Supreme Court's latest word on the issue of multiple convictions is *Gonzalez, supra*, 60 Cal.4th 533. The *Gonzalez* defendant sexually assaulted a woman who had been rendered unconscious by intoxication. He was convicted separately under two subdivisions of section 288a, which prohibit oral copulation of an unconscious person (*id.*, subd. (f)) and oral copulation of a person rendered defenseless by intoxication (*id.*, subd. (i)). The defendant contended he could not be convicted of both offenses because he had committed a single act of oral copulation. (*Gonzalez*, at p. 536.) His appeal was premised on *Craig, supra,* 17 Cal.2d 453, 455, in which the defendant was convicted of two counts of rape based on a single act of forcible intercourse with an underage girl. This conduct violated two subdivisions of section 261, which separately criminalized sex with a minor and forcible intercourse. In requiring consolidation of the convictions, the *Craig* court reasoned: "Under [section 261], but one punishable offense of rape results from a single act of intercourse, although that act may be accomplished under more than one of the conditions or circumstances specified in the [statutory] subdivisions. These subdivisions merely define the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act. . . . The victim was not doubly outraged, once because she was forcibly attacked and once because she was under 18 years of age. There was but a single outrage and offense." (*Id.* at p. 455.) The court expressly distinguished conduct that

---

[3] Compare *People v. Craig* (1941) 17 Cal.2d 453, 455 (*Craig*) (one offense of rape results from a single act of unlawful intercourse, despite violating more than one statutory subdivision); *People v. Muhammad* (2007) 157 Cal.App.4th 484, 493–494 (same for stalking); *People v. Ryan* (2006) 138 Cal.App.4th 360, 366–367 (same for forgery), with *People v. Toure* (2015) 232 Cal.App.4th 1096, 1106 (defendant can suffer convictions under more than one subdivision of statute proscribing driving under the influence and causing bodily injury).

5

violated more than one statute, noting different statutes are "based upon an independent public policy." (*Id.* at p. 458.)

Although the circumstances of *Craig* would appear to be materially indistinguishable from those in *Gonzalez*, the *Gonzalez* court permitted both convictions for oral copulation to stand, basing its conclusion on an analysis of the statutory structure. (*Gonzalez, supra*, 60 Cal.4th at pp. 537–538.) Within the statute, section 288a, subdivision (a) defines oral copulation in general terms. The subsequent subdivisions of the statute describe the various circumstances under which oral copulation, as so defined, is illegal. Each subdivision describes a distinct circumstance and contains a specific punishment, applicable solely to the circumstances described in the subdivision. In inferring a legislative intent to permit convictions for violations of both subdivisions (f) and (i), the *Gonzalez* court concluded: "These offenses differ in their necessary elements—an act of oral copulation may be committed with a person who is unconscious but not intoxicated, and also with a person who is intoxicated but not unconscious—and neither offense is included within the other. [Citation.] [¶] . . . Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 is no impediment to a defendant's conviction under more than one such subdivision for a single act." (*Id.* at p. 539.)

*Gonzalez* distinguished *Craig* on the basis of the different structure of the two statutes involved. At the time *Craig* was decided, section 261 stated, " '[r]ape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances,' " and thereafter listed a variety of circumstances in separately numbered subparagraphs. No individual punishments were specified for the different circumstances. (*Gonzalez, supra*, 60 Cal.4th at p. 539, fn. 2.) According to *Gonzalez*, *Craig* "simply concluded, based on the wording and structure of the statute, that former section 261 set forth only one offense that could be committed under several different circumstances, as described in its several subdivisions. This conclusion flowed

6

naturally from the wording and structure of former section 261. . . . [¶] . . . [¶] Section 288a is textually and structurally different from former section 261." (*Gonzalez,* at p. 539, fn. omitted.)

### 2. *Violations of Section 245, Subdivision (a)(1) and (4)*

#### a.  The Statutory Structure of Section 245

The statutory structure of section 245 is indistinguishable from that of section 288a.  Each subdivision of section 245 sets out different circumstances under which a person can commit aggravated assault, and each subdivision specifies the punishment applicable to those circumstances.  The reasoning of *Gonzalez* would therefore classify each subdivision as a separate offense and permit more than one conviction based upon the violation of more than one subdivision of section 245.

The minor encourages us to find subdivision (a)(1) and (4) of section 245 do not constitute separate offenses on the basis of the legislative history of the amendment creating subdivision (a)(4), which described the legislation as a "technical, nonsubstantive" change.  (Stats. 2011, ch. 183.)  According to the bill's author, the purpose of the amendment was to make it easier for prosecutors and defense attorneys to determine whether a defendant's past aggravated assault conviction involved the use of a weapon when examining a defendant's criminal history, since past aggravated assault convictions involving the use of a weapon are treated differently for certain purposes than those not involving a weapon.  (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1026 (2011–2012 Reg. Sess.) Apr. 26, 2011, pp. 1–2.)  Because criminal histories typically list prior crimes according to the statute violated, a citation to section 245, subdivision (a)(1) was ambiguous in this respect prior to the amendment.  (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1026 (2011–2012 Reg. Sess.) Apr. 26, 2011, p. 2.)  The minor argues no separate offense was created by the amendment because the two clauses specified different methods of committing a single offense before the amendment and the Legislature expressed no intent to change that situation in enacting the amendment.

The rationale of *Gonzalez* precludes such an analysis. The court held, in effect, that the Legislature is deemed to have intended to create separate offenses whenever a statute isolates violations with separate elements and punishments in separate subdivisions. Under *Gonzalez*, this statutory structure was held to be an element of the plain language of the statute, and that language was held to be unambiguous in creating separately convictable offenses. Given the absence of ambiguity, expressions of intent in a statute's legislative history are irrelevant to its interpretation. (*Gonzalez, supra*, 60 Cal.4th at pp. 537–538.)

### b. Necessarily Included Offenses

While we do not accept the minor's reasoning, we find merit in his general point. *Gonzalez* acknowledges an exception to its general rule. As the court noted in discussing the subdivisions violated by the defendant: "These offenses differ in their necessary elements . . . and neither offense is included within the other." (*Gonzalez, supra*, 60 Cal.4th at p. 539.) In other words, the court recognized that the general rule prohibiting multiple convictions for necessarily included offenses (*Reed*, *supra*, 38 Cal.4th at p. 1227) operates with respect to separate subdivisions within a single statute.[4] Because, as discussed below, we conclude assault with a deadly weapon other than a firearm includes the elements of assault by force likely to produce great bodily injury, such that a person cannot commit the former without at the same time committing the latter, a person cannot be convicted of both offenses on the basis of a single act, notwithstanding their inclusion in separate, self-contained subdivisions of section 245.

The separate aspects of aggravated assault found in subdivision (a)(1) and (4) of section 245 have not previously been considered in the terms associated with lesser

---

[4] The language of *Gonzalez* echoes the "elements test" for determining whether one offense is a lesser included offense of another. " 'The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater. [Citation.] In other words, " '[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " ' " (*People v. Robinson* (2016) 63 Cal.4th 200, 207.)

included offenses because, until 2011, the subdivisions were alternative provisions within a single statutory subdivision. As section 245 was constructed prior to 2011, a person could commit aggravated assault by committing assault either "with a deadly weapon or instrument other than a firearm *or* by any means of force likely to produce great bodily injury." (Former § 245, subd. (a)(1).) Use of a deadly weapon other than a firearm or force likely to produce great bodily injury were therefore two means to commit the same offense, rather than different offenses. When the two aspects are considered separately, however, it becomes clear the latter is necessarily committed when the former occurs.

The crime of assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240; *People v. Navarro* (2013) 212 Cal.App.4th 1336, 1344.) It is unnecessary for any actual injury to occur. (*People v. White* (2015) 241 Cal.App.4th 881, 884.)

The distinction between assault with a deadly weapon other than a firearm and assault by force likely to produce great bodily injury was explored in *People v. Aguilar* (1997) 16 Cal.4th 1023 (*Aguilar*), in which the court considered "whether hands or feet can constitute 'deadly weapons' within the meaning of the statute." (*Id.* at p. 1026.) In *Aguilar,* the defendant had severely beaten and kicked the victim, and the prosecutor argued to the jury a conviction for aggravated assault was appropriate because hands and feet may be deadly weapons within the meaning of former section 245, subdivision (a)(1). (*Aguilar*, at p. 1029.) In disapproving the prosecutor's argument, the court noted weapons not inherently deadly "are defined by their use in a manner capable of producing great bodily injury." (*Id.* at p. 1030.) For that reason, the clause "force likely to produce great bodily injury" would be rendered redundant if hands and feet could be considered "weapons" or "instruments." (*Ibid*.) Rather, the separate clause "force likely to produce great bodily injury" was included in the statute to cover the application of such force without the use of an instrument. (*Ibid.*)

While the court found the prosecutor's argument to be improper, it concluded the prosecutor's argument was harmless, using reasoning directly pertinent to the issue before us. "Ultimately . . . , the jury's decisionmaking process in an aggravated assault

9

case under [former] section 245, subdivision (a)(1), is functionally identical regardless of whether, in the particular case, the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force used." (*Aguilar*, *supra*, 16 Cal.4th at p. 1035.) That is, if the defendant acted by means of a weapon other than a firearm, it was necessary for the jury to find the defendant applied force likely to produce great bodily injury, regardless of whether the force was applied by means of an instrument or by hands and feet. As the court concluded, there is a "fundamental identity of the concepts of assault with a deadly weapon and assault by means of force likely to produce great bodily injury." (*Id.* at p. 1036.) Both aspects of former section 245, subdivision (a)(1) required the attempted or actual use of force likely to produce great bodily injury; they differed only in that subdivision (a)(1) required force to be applied through use of a weapon or other instrument.

*Aguilar* is conclusive here. When a defendant commits an assault using an instrument other than a firearm, the instrument is considered to be a "deadly weapon," and therefore to qualify under section 245, subdivision (a)(1), only if the instrument is used in a manner likely to produce death or great bodily injury. For that reason, when assault with a deadly weapon other than a firearm is found to have occurred, the trier of fact necessarily must have concluded the defendant used or attempted to use force likely to produce great bodily injury, since that likelihood is what makes a weapon or instrument "deadly." If the use of the instrument was not likely to produce great bodily injury, the defendant's conduct could not satisfy subdivision (a)(1). Because both subdivisions require the use or attempted use of force likely to produce great bodily injury, subdivision (a)(4) does not "differ in [its] necessary elements" from subdivision (a)(1), and subdivision (a)(4) is "included within" subdivision (a)(1).[5]

---

[5] This is true as well when a defendant is convicted of using a "deadly weapons as a matter of law," such as a dirk or blackjack. (*Aguilar*, *supra*, 16 Cal.4th at pp. 1029, 1037, fn. 10.) While no jury finding of force likely to produce great bodily injury is required in these circumstances, those instruments are declared "deadly" weapons as a

10

(*Gonzalez, supra,* 60 Cal.4th at p. 539.)  A defendant who has been convicted of a violation of subdivision (a)(1) therefore cannot also suffer a conviction under subdivision (a)(4) based on the same assault.[6]

The Attorney General, citing *Aguilar*, argues subdivision (a)(4) of section 245 is not included within subdivision (a)(1) because a violation of subdivision (a)(1) requires the use of a weapon, while subdivision (a)(4) is addressed to an assault using only hands or feet.  The argument reflects the Legislature's original motivation in adding the phrase "force likely to produce great bodily injury" to section 245, which was to include violent assaults committed without the use of a weapon or other instrument within the aggravated assault statute.  (*Aguilar*, *supra*, 16 Cal.4th at pp. 1030–1031.)  We would agree with the Attorney General if the Legislature had expressly included this limitation in subdivision (a)(4) by excluding assaults carried out by means of an instrument.  In that case, the two offenses would be mutually exclusive, rather than overlapping.  That is not, however, the language of subdivision (a)(4).  As written, the subdivision encompasses *any* use of force likely to produce great bodily injury, which necessarily includes the application of that force by use of a weapon or other instrument.  The juvenile court recognized as much when it found the minor to have violated both provisions on the basis of an assault using a knife.  Were subdivision (a)(4) restricted in the manner argued by the Attorney General, the minor's conviction under subdivision (a)(4) would have been unsupported by the evidence.

The Attorney General also argues that subdivision (a)(4) of section 245 requires the *application* of force, while subdivision (a)(1) does not.  The argument ignores the

---

matter of law precisely because they "are weapons in the strict sense of the word and are 'dangerous or deadly' to others in the ordinary use for which they are designed." (*People v. Raleigh* (1932) 128 Cal.App. 105, 108.)  Use of these weapons necessarily involves the use of force likely to produce death or serious injury.  (See *People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 541 [to be deadly weapon as a matter of law, weapon must be "capable of inflicting great bodily injury"].)

[6] Because the issue is not before us, we offer no opinion whether a defendant who attacks or attempts to attack another both with a deadly weapon and with hands or feet, the latter in a manner likely to produce great bodily, can be convicted of both offenses.

11

definition of assault, which is incorporated into section 245. An assault includes an attempt to apply force as well as the actual application of force. It is commonly held that a defendant need not make any physical contact with the victim to commit aggravated assault. (E.g., *People v. White, supra,* 241 Cal.App.4th at p. 886; *People v. Brown* (2012) 210 Cal.App.4th 1, 7 ["Because the statute speaks to the capability of inflicting significant injury, neither physical contact nor actual injury is required to support a conviction."].) Under subdivision (a)(4), a powerful punch that misses is an aggravated assault to the same degree as the same punch that lands, at least in theory. (E.g., *People v. Leonard* (2014) 228 Cal.App.4th 465, 488 [evidence that person swung fist toward the victim with force sufficient to smash a car window supports conviction for aggravated assault].)

We are aware *In re Mosley, supra,* 1 Cal.3d 913, states that assault by means of force likely to produce great bodily injury is not a lesser included offense of assault with a deadly weapon under former section 245. (*Mosley*, at p. 919, fn. 5.) At the time *Mosley* was decided, however, the two were not separate offenses. As discussed above, all aspects of the crime of aggravated assault were encompassed within a single statutory paragraph that included both provisions. (*Id.* at p. 918, fn. 4.) As the court explained its reasoning: "Section 245 . . . defines only one offense, to wit, 'assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury. . . .' The offense of assault by means of force likely to produce great bodily injury is not an offense separate from—and certainly not an offense lesser than and included within—the offense of assault with a deadly weapon." (*Id.* at p. 919, fn. 5.) The explanation makes clear that the court's conclusion was based on the structure of the statute, which specified use of a deadly weapon and use of force likely to produce great bodily injury as alternative means to commit the same offense, aggravated assault. (See *People v. Martinez* (2005) 125 Cal.App.4th 1035, 1043 ["As is readily apparent, [former section 245, subdivision (a)(1)] describes two different ways of committing a prohibited assault: (1) by use of a deadly weapon or instrument other than a firearm *or* (2) by means of force likely to produce great bodily injury."].)

12

Once the Legislature separated these provisions into different subdivisions, the logic of *Mosley* no longer holds. Under the reasoning of *Gonzalez*, the separation of the two aspects of aggravated assault into separate, self-contained subdivisions created two offenses where formerly there was one. Considered as separate offenses, for the reasons discussed above, assault by means of force likely to produce great bodily injury is necessarily included within assault with a deadly weapon.

For this reason, the court's true findings with respect to count two, which alleged a violation of subdivision (a)(4) of section 245, must be vacated, and the enhancements alleged in count two must be stricken. Given these modifications, we also must vacate the juvenile court's calculation of the minor's maximum term of confinement and restitution fine.[7]

## B. *Enhancement for Use of a Knife*

The minor contends the juvenile court's true finding of the enhancement alleging use of a deadly weapon in count one also must be vacated because the use of a deadly weapon is an element of a violation of section 245, subdivision (a)(1).

Section 12022, subdivision (b) imposes an additional year of imprisonment for "[a] person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony . . . , unless use of a deadly or dangerous weapon is an element of that offense." It has long been accepted that an allegation under section 12022, subdivision (b) cannot be used to enhance a conviction for assault by means of a deadly weapon because the enhancement allegation duplicates an element of the offense. (*People v. McGee* (1993) 15 Cal.App.4th 107, 113–115.) The section 12022 enhancement under count one, for violation of section 245, subdivision (a)(1), must therefore be stricken.

---

[7] We are persuaded by the minor that there is uncertainty over the court's restitution fine. At the hearing, the court set the total fine at $200, but the dispositional order specifies $200 *per felony*. We therefore vacate the fine and direct its recalculation on remand. We do not mean to imply that either fine is unavailable or improper under section 245, subdivision (a)(1).

The Attorney General does not dispute this conclusion. She merely argues that a remand is unnecessary on this ground because the juvenile court does not appear to have taken the enhancement into account in calculating the minor's maximum term of confinement.[8] Because we must remand for recalculation of the maximum term of confinement as a result of the vacated violation under subdivision (a)(4) of section 245, the argument is moot.

## C. *Electronic Search Condition*

The minor contends the electronic search condition, which permits the warrantless search of "any electronic device & cell phone & access codes," is vague and overbroad and violates his rights to privacy and free speech under the First Amendment.[9]

The validity of electronic search conditions has been the subject of a number of published decisions over the past year. We adhere to the position set out in our decision in *In re P.O.* (2016) 246 Cal.App.4th 288 (*P.O.*), in which we held that an unrestricted electronic search condition like that imposed by the juvenile court does not violate the privacy interests of a ward, but it is overbroad in failing to limit the information to which the probation office has access. As we explained, an electronic search condition is constitutionally permissible because it is reasonably related to future criminality, as that concept was defined in *People v. Olguin* (2008) 45 Cal.4th 375. (*P.O.*, at pp. 295–296.) Under *Olguin*, "a probation condition that enables probation officers 'to supervise [their] charges effectively is . . . "reasonably related to future criminality" ' [Citation.] . . . 'even if [the] condition . . . has no relationship to the crime of which a defendant was convicted.' " (*P.O.*, at p. 295.) Because access to a ward's social media accounts permits the probation office to monitor the ward's compliance with other probation conditions, it

_____

[8] The juvenile court did not explain its calculation of the maximum term.

[9] The minor did not object to this condition below and therefore forfeited his objection. (*In re Vincent G.* (2008) 162 Cal.App.4th 238, 246.) We exercise our discretion to consider the constitutional issue, to the extent possible "without reference to the sentencing record." (*People v. Rodriguez* (2013) 222 Cal.App.4th 578, 585.)

14

constitutes a permissible infringement on the ward's First Amendment interests under *Olguin*.

On the other hand, any probation condition that imposes limits on a minor's constitutional rights must be tailored to the purpose of the condition to avoid unconstitutional overbreadth. (*P.O.*, *supra*, 246 Cal.App.4th at p. 297.) The juvenile court's summarily phrased condition is overbroad because it grants the probation office access to any personal account maintained by the minor on any Web site that is accessible through his phone, personal computer, or other "electronic device." As we explained in *P.O.*, an electronic search probation condition can validly grant the probation office access only to information pertinent to monitoring the minor's compliance with other probation conditions. (*Id.* at pp. 297–298.) We therefore direct entry of a modified electronic search condition.

### III. DISPOSITION

The juvenile court's findings with respect to the minor's violation of section 245, subdivision (a)(4), alleged in count two, and the juvenile court's calculation of the minor's maximum term of confinement and restitution fine are vacated. The enhancements alleged under count two and the enhancement allegation under section 12022, subdivision (b)(1) in count one are stricken. The matter is remanded to the juvenile court for entry of a new detention hearing order reflecting these modifications, recalculation of the minor's maximum term of confinement and restitution fine in light of the modifications, and entry of a new dispositional order reflecting the recalculated maximum term of confinement and fine.

In addition, the search condition of the dispositional order, which currently reads, "Submit person, property, any vehicle under minor's control, and residence to search and seizure by any peace officer any time of the day or night with or without a warrant[,] including any electronic device & cell phone & access codes," is modified to read: "Submit your person and any vehicle, room, or property under your control to a search by the probation officer or a peace officer, with or without a search warrant, at any time of the day or night. Submit all electronic devices under your control to a search of any

15

medium of communication reasonably likely to reveal whether you are involved with drugs or are otherwise in violation of the remaining probation conditions, with or without a search warrant, at any time of the day or night, and provide the probation or peace officer with any passwords necessary to access the information specified. Such media of communication includes text messages, voicemail messages, photographs, e-mail accounts, and social media accounts."

_____
Margulies, J.

We concur:

_____
Humes, P.J.

_____
Dondero, J.

A145238

17

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. Theresa J. Canepa

Counsel:

Gail E. Chesney, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Ronald E. Niver and Joan Killeen, Deputy Attorneys General for Plaintiff and Respondent.