Filed 12/22/17

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re C.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>C.D.,<br><br>　　　　Defendant and Appellant. | A150290<br><br>(Contra Costa County<br>Super. Ct. No. J1201378) |

　　　　Based on his acceleration of a stolen automobile toward a police officer, appellant C.D. was found to have committed two counts of violating Penal Code section 245, subdivision (c),[1] which penalizes the assault of a peace officer "with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury." We conclude that one of these counts must be reversed because unlike section 245, subdivision (a)(1)–(4), which currently divides aggravated assault not involving a peace officer into four different crimes that may support separate convictions, section 245, subdivision (c), describes a single offense that can be committed two separate ways. We also reject appellant's argument that the evidence was insufficient to support even one true finding of assault under section 245, subdivision (c), and conclude the trial court

---

[*]　　　　Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of section II, parts B and C.

[1]　　　　Statutory references are to the Penal Code unless otherwise indicated.

properly exercised its discretion when ruling on appellant's motion to disclose police personnel records under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

## I. BACKGROUND

On July 5, 2015, San Pablo Police Department Officer Niemi was patrolling the 1600 block of 16th Street in San Pablo and determined that an Acura parked on the street had been stolen. Appellant, who was driving the Acura, pulled it away from the curb and into the middle of a caravan of three cars. Officer Niemi followed in his marked patrol car as the cars in the caravan each stopped at a stop sign and turned right onto Bush Avenue, travelling westbound. The cars stopped again at a stop sign at the intersection of Bush Avenue and Rumrill Boulevard. Niemi pulled his patrol car into the eastbound lane of Bush Avenue facing against traffic so he could get a better visual of the stolen Acura, and stopped next to the third (last) car of the caravan. He got out and stood next to his driver's side door.

Officers Hearn and Dimercurio arrived on the scene in separate marked patrol cars. Traveling in the opposite direction in the eastbound lane of Bush Avenue, Hearn stopped his patrol car parallel to the first of the three vehicles in the caravan, a red SUV, then got out and stood inside his open driver's side door. There appeared to be about seven to eight feet of space between Hearn's patrol car and the red SUV. Dimercurio parked behind Hearn's vehicle and got out, and all of the officers activated the lights of their patrol cars.

Officer Hearn pointed his gun at appellant and shouted commands at him. Appellant looked to the left and right, turned his steering wheel to the left, stepped on the gas pedal and, accelerating to about 20 to 25 miles per hour, drove the Acura through the gap between Officer Hearn's patrol car and the SUV. Officer Niemi saw the left front fender of the Acura strike the driver's door of Hearn's patrol car as Hearn "turned his back towards the vehicle and pushed himself up against the frame of the car as the driver door closed on his body."

Officer Hearn fired several shots at appellant, and the Acura came to rest after driving over a curb and hitting a chain link fence. One of the shots hit appellant in the

2

head and appellant lost an eye as a result. Hearn was not injured during the incident, and no documented repairs were made to the patrol car he was driving.

The district attorney filed a petition under Welfare and Institutions Code section 602, subdivision (a), alleging appellant should be continued as a ward of the juvenile court based on his commission of three offenses: (1) assault with a deadly weapon upon a peace officer under section 245, subdivision (c); (2) assault upon a peace officer by means of force likely to produce great bodily injury under section 245, subdivision (c); and (3) taking or driving a vehicle without the owner's permission under Vehicle Code section 10851, subdivision (a). Both assault counts were based on the act of driving the stolen Acura toward Officer Hearn.

At the contested jurisdictional hearing, appellant presented evidence designed to show there was no assault against Officer Hearn because the Acura did not actually strike the door of his patrol car and because there had been "ample room" for the Acura to safely pass between the patrol car and the red SUV. The trial court found all three counts true, stating "[t]he evidence is abundantly clear that [appellant] jerked the steering wheel to the left and accelerated, and there's no way that action could point at anything else but directly at Officer He[a]rn as he accelerated. [¶] He then adjusted, it appears, and may have tried to go through the gap, but in that first second, he was pointed directly at officer He[a]rn with a weapon that is a deadly weapon and with [the] ability to cause great bodily injury. In that moment, the assault was committed. [¶] . . . .[¶] I don't know whether he struck that door, and there's different arguments that can be made. But I'm absolutely convinced that he came very close to the door the officer was behind." Appellant was committed to the Department of Juvenile Justice for a maximum period of six years eight months.

## II. DISCUSSION

### A. *Section 245(c) Describes a Single Offense*

Section 245, subdivision (c), provides, "Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or

3

reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years." Appellant was found to have committed one count of assault with a deadly weapon under section 245, subdivision (c), and one count of assault by means of force likely to cause great bodily injury under section 245, subdivision (c), based on the same act of driving the stolen Acura toward Officer Hearn. Appellant argues that only one count should have been found true because section 245, subdivision (c), defines a single offense of aggravated assault, which is committed when the defendant uses a deadly weapon other than a firearm *or* some other means likely to produce great bodily injury. We agree.

Section 954 provides in relevant part, "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts. . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged." Recently, our Supreme Court held "[t]he most reasonable construction of the language in section 954 is that the statute authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct." (*People v. Vidana* (2016) 1 Cal.5th 632, 650 (*Vidana*).)

Whether a statute defines different offenses or merely different ways of committing the same offense "properly turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537 (*Gonzalez*).) Several recent decisions have examined the circumstances in which a statute (or statutes) will support multiple convictions.

In *Gonzalez*, *supra*, 60 Cal.4th at 533, the defendant had sexually assaulted a woman who had been rendered unconscious by intoxication. The court considered

4

whether he could be properly convicted of both oral copulation of an unconscious person under section 288a, subdivision (f), and oral copulation of an intoxicated person under section 288a, subdivision (i).  The court concluded the answer was yes.  (*Gonzalez*, at p. 536.)   Key to this result was the structure of section 288a, in which subdivision (a) defined oral copulation in general terms and the remaining subdivisions "define various ways the act may be criminal.  Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment.  Not all of these punishments are the same.  That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 is no impediment to a defendant's conviction under more than one such subdivision for a single act." (*Gonzalez*, at p. 539.)

In *People v. White* (2017) 2 Cal.5th 349 (*White*), the court extended the reasoning of *Gonzalez* to the statute defining rape and upheld dual convictions of rape of an intoxicated person and rape of an unconscious person under sections 261, subdivisions (a)(3) and (a)(4).  The court overruled *People v. Craig* (1941) 17 Cal.2d 453, "to the extent it held that the different subdivisions of former section 261 'merely define the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act.' "  The court in *White* acknowledged structural differences between section 261 and section 288a, the oral copulation statute that had been analyzed in *Gonzalez*, but concluded the rape statute was substantively parallel.  (*White*, at p. 359.)  "We see no suggestion that the Legislature intended, and no reason it might have intended, a different rule for rape than exists for oral copulation[.]"  (*Id*. at p. 357.)

In *Vidana*, *supra*, 1 Cal.5th at p. 649, the court held that grand theft by larceny under section 487, subdivision (a), and embezzlement under section 503 are "different statements of the same offense."  It reached this result notwithstanding that separate code provisions were involved, based on a comprehensive review of California's theft statutes including section 490a, which states " '[w]herever any law or statute of this state refers to or mentions larceny, embezzlement or stealing, said law or statute shall hereafter be read

5

and interpreted as if the word 'theft' were substituted therefore.' " (*Vidana*, *supra*, at p. 641.) "Although the terms of section 490a are awkward in their literal application, the obvious intent of this statute. . . was to create a single crime of theft." (*Id*. at p. 648.)

Finally, in *In re Jonathan R.* (2016) 3 Cal.App.5th 963, 968–969 (*Jonathan R.*), the court reviewed dual assault convictions under section 245, *subdivision (a)*, and determined the defendant could be separately convicted of both an assault with a deadly weapon under section 245, subdivision (a)(1), and assault with a deadly weapon by means likely to produce great bodily injury under section 245, subdivision (a)(4). (*Jonathan R.*, at pp. 967–971.)[2] Taking guidance from the Supreme Court's decision in *Gonzalez*, the *Jonathan R.* court explained, "The statutory structure of section 245 [subdivision (a)] is indistinguishable from that of section 288a. Each subdivision of section 245 [subdivision (a)] sets out different circumstances under which a person can commit aggravated assault, and each subdivision specifies the punishment applicable to those circumstances." (*Jonathan R.*, at p. 970.) Nonetheless, the court found dual convictions under section 245, subdivision (a)(1) and (a)(4) to be unsustainable on a different ground: assault by means likely to produce great bodily injury is a lesser

---

[2] In its current form, section 245, subdivision (a), provides as follows: "(a)(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment. [¶] (2) Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment. [¶] (3) Any person who commits an assault upon the person of another with a machinegun, as defined in Section 16880, or an assault weapon, as defined in Section 30510 or 30515, or a [.]50 BMG rifle, as defined in Section 30530, shall be punished by imprisonment in the state prison for 4, 8, or 12 years. [¶] (4) Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

6

included offense of assault with a deadly weapon, and a defendant may not be convicted of both a greater crime and a lesser included offense based on the same conduct. (*Jonathan R.*, at p 972.)

The People urge us to follow the *Jonathan R.* court's analysis of multiple convictions, noting that the only substantive difference between section 245, subdivision (c), and section 245, subdivision (a)(1) and (a)(4), is that the former penalizes an aggravated assault when the victim is a peace officer. They argue, "If two convictions of assault can be sustained based on one act when the victim is a regular citizen, then surely the same must be true when the assault is committed against a peace officer or firefighter, whom the Legislature has deemed is entitled to even greater protection than the regular citizen, as evidenced by the increased punishment." While superficially appealing, the problem with the People's argument is that subdivision (c) of section 245 has a different structure, and a different legislative history, than subdivision (a).

Prior to an amendment to the statute in 2011, section 245, subdivision (a), had set forth assault with a deadly weapon and assault by means of force likely to produce great bodily injury as "alternative provisions within a single statutory subdivision" using language that was essentially the same as section 245, subdivision (c). (*Jonathan R.*, *supra*, 3 Cal.App.5th at p. 972.)[3] That language was construed by the Supreme Court to

---

[3] "For much of the first half of the last century, [section 245] read, ' "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison . . . , or in a county jail. . . , or by fine. . . , or by both such fine and imprisonment." ' [Citations.] In 1961, this provision was designated subdivision (a), and a subdivision (b) was added separately criminalizing aggravated assault against a peace officer. [Citation.] In addition to other statutory changes to section 245 not pertinent here, subdivision (a) was later split into two parts, dividing the crime into (1) assault with a deadly weapon other than a firearm or by force likely to produce great bodily injury, and (2) assault with a firearm. The latter imposed the new requirement of a minimum six-month jail term. [Citations.] In 1989, subdivision (a)(3) was added to section 245, specifying the crime of assault with a machinegun or assault weapon, which carried a mandatory prison term, unlike the other provisions of subdivision (a). [Citation.] Finally, in 2011, subdivision (a)(1) was split into the crimes of assault with a deadly weapon other than a firearm, which remained subdivision (a)(1),

---

7

"define[] only one offense, to wit, 'assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury' " (*In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5 (*Mosley*)). The *Jonathan R.* decision recognized as much, explaining that under the pre-2011 version of section 245, subdivision (a), "[u]se of a deadly weapon other than a firearm or force likely to produce great bodily injury were therefore two means to commit the same offense, rather than different offenses." (*Jonathan R.*, at p. 972.)

In 2011, however, the two variants of aggravated assault under former section 245, subdivision (a)(1), were placed in separate paragraphs of subdivision (a). (Stats. 2011, ch. 183, § 1.) The reason for the change was to make it easier going forward to determine whether a defendant's prior convictions for aggravated assault under section 245, subdivision (a), involved conduct subjecting the defendant to certain recidivist provisions, because enhancements such as the Three Strikes law applied to prior assault convictions only when those convictions involved the use of a deadly weapon. (*Jonathan R.*, *supra*, 3 Cal.App.5th at p. 971; see *People v. Banuelos* (2005) 130 Cal.App.4th 601, 604–607.) There was no need to similarly amend section 245, subdivision (c), because an aggravated assault against a peace officer is a serious felony and qualifies as a "strike" regardless of whether a deadly weapon was used. (§ 1192.7, subd. (c)(31); *People v. Semien* (2008) 162 Cal.App.4th 701, 709–710.)

The defendant in *Jonathan R.* argued unsuccessfully that in light of the reason for the 2011 amendment to section 245, subdivision (a), the separation of assault with a deadly weapon and assault by means likely to produce great bodily injury was a " 'technical, nonsubstantive' change" and "no separate offense was created by the amendment because the two clauses specified different methods of committing a single offense before the amendment and the Legislature expressed no intent to change that situation in enacting the amendment." (*Jonathan R.*, at p. 971.) The court rejected the

and assault by force likely to produce great bodily injury, which became subdivision (a)(4)." (*Jonathan R.*, *supra*, 3 Cal.App.5th at pp. 967–968.)

8

claim: "The rationale of *Gonzalez* precludes such an analysis. The court held, in effect, that the Legislature is deemed to have intended to create separate offenses whenever a statute isolates violations with separate elements and punishments in separate subdivisions. Under *Gonzalez*, this statutory structure was held to be an element of the plain language of the statute, and that language was held to be unambiguous in creating separately convictable offenses. Given the absence of ambiguity, expressions of intent in a statute's legislative history are irrelevant to its interpretation. [Citation.]" (*Jonathan R.*, at p. 971.)

Unlike section 245, subdivision (a), which now divides assault with a deadly weapon and assault by means likely to produce great bodily injury into separate subparagraphs, section 245, subdivision (c), continues to set forth the two variants of aggravated assault against a peace officer within a single clause. It is structurally the same as former section 245, subdivision (a), before the 2011 amendment, which was construed by our Supreme Court to state a single offense. (*Mosley*, *supra*, 1 Cal.3d at p. 919, fn. 5.) Aggravated assault against a peace officer under section 245, subdivision (c), remains a single offense, and multiple violations of the statute cannot be found when they are based on the same act or course of conduct.

We are not persuaded by the People's argument that a different result is compelled by the Supreme Court's recent decision in *People v. Page* (2017) ___ Cal.5th ___ [S230793, 2017 WL 5895782] (*Page*). The issue in *Page* was not the propriety of dual convictions under a single statute, but whether a defendant convicted under Vehicle Code section 10851 was eligible for resentencing for a misdemeanor offense under section 1170.18, which enacted as part of Proposition 47. (*Id.*, at p. __ [2017 WL 5895782, *1].) The Supreme Court held that certain convictions under Vehicle Code section 10851 do qualify for treatment under Proposition 47, reasoning as follows: (1) section 10851 may be violated in two different ways, by either taking a vehicle or driving it without the owner's consent; (2) newly-enacted section 490.2 (which is part of Proposition 47) mandates misdemeanor punishment for a defendant who "obtain[ed] any property by theft" when its value was $950 or less; (3) when a defendant was convicted under the

9

theft variant of section 10851, section 490.2 applies and mandates misdemeanor punishment. (*Id.*, at pp. ___ [2017 WL 5895782 *3–5.]) The court in *Page* did not conclude that Vehicle Code section 10851 creates two separate offenses, as the People suggest, but refers instead to the "theft and non-theft *forms*" of that crime, strongly suggesting that the Court views the provision as creating a single offense that could be committed in two different ways. (*Id.*, at p. ___ [2017 WL *3].) Nothing in *Page* suggests it would be appropriate for a defendant to suffer two convictions under Vehicle Code section 10851 based on a single, continuous instance of taking and driving a vehicle.

We will therefore order the judgment modified to reverse one of the two findings under section 245, subdivision (c). This will not affect appellant's maximum confinement time because the juvenile court concluded that the time attributable to one assault count was subject to a stay under section 654.

B. *The Evidence is Sufficient to Support One Count of Violating § 245(c)*

Appellant argues the evidence does not support even one true finding of aggravated assault because the evidence did not show he aimed the stolen Acura at Officer Hearn. We disagree.

In determining the sufficiency of the evidence supporting a conviction, "appellate courts must review 'the whole record in the light most favorable to the judgment' and decide 'whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Hatch* (2000) 22 Cal.4th 260, 272.) " 'Substantial' " evidence is evidence that is " 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) On appeal, the uncorroborated testimony of a single eyewitness is sufficient to sustain a conviction " 'unless the testimony is physically impossible or inherently improbable.' " (*People v. Panah* (2005) 35 Cal.4th 395, 489.) We do not review the fact-finder's credibility determinations. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

"[A]ssault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790.) "[A] defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to the defendant, would find that the act would directly, naturally and probably result in a battery." (*Id*. at p. 788, fn. 3.)

"[A]ny operation of a vehicle by a person knowing facts that would lead a reasonable person to realize a battery will probably and directly result may be charged as an assault with a deadly weapon." (*People v. Wright* (2002) 100 Cal.App.4th 703, 706; see *People v. Oehmigen* (2014) 232 Cal.App.4th 1, 11; *People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1188–1189.) Viewed in the light most favorable to the judgment, the evidence showed that appellant intentionally accelerated toward Officer Hearn in an effort to escape through the narrow space between Hearn's patrol car and the SUV stopped in front of the stolen car appellant was driving. Officer Niemi estimated the gap between Hearn's patrol car and the SUV was seven to eight feet; a defense expert measured the Acura as five feet six inches wide. Even if appellant did not intend to strike the officer, a reasonable person would have understood that accelerating through such a tight space would "probably and directly" cause a collision. At least, a reasonable trier of fact could so find.

C. Pitchess *Motion*

Under *Pitchess*, *supra*, 11 Cal.3d at pages 537–538, and Evidence Code sections 1043 and 1045, a defendant may file a motion for discovery of certain personnel records concerning police officers when those records are material to the defense of a pending criminal prosecution. Upon a proper showing of good cause by the defendant, the trial court is required to review the personnel records in camera and order disclosure of appropriate records. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1219–1220.) The trial court should make a record of the documents it examined sufficient to permit appellate

11

review, which may consist of a description of the documents it examined. (*Id*. at p. 1229.)

Appellant filed a *Pitchess* motion seeking discovery of the police personnel records of officers Hearn, Niemi and Dimercurio. As to Officer Hearn, the motion sought documents relevant to claims of excessive force and dishonesty. As to Officers Niemi and Dimercurio, it sought documents relevant to the fabrication of police reports, evidence or charges, material misrepresentations, and the officers' propensity for dishonesty.

The trial court initially granted the *Pitchess* request as to Officer Hearn but denied it as to Officers Niemi and Dimercurio. The court conducted an in camera review of Officer Hearn's records on March 17, 2016, and sealed that transcript after determining there was nothing discoverable in the records. On August 16, 2016, the trial court conducted a review of the personnel records of Officers Niemi and Dimercurio in response to an alternative writ and order to show cause issued by this Court. It also conducted an additional review of Officer Hearn's file, based on information that he had been placed on administrative leave since the first *Pitchess* review. The court found no discoverable information as to any of the three officers and ordered the transcript sealed.

Appellant requests that this Court conduct its own review of the in camera hearings to determine whether the trial court abused its discretion in determining that no records were discoverable. (See *People v. Hughes* (2002) 27 Cal.4th 287, 330.) Respondent concurs that such review is appropriate in the present case, and we have reviewed the reporter's transcripts of the in camera hearings held on March 17, 2016, and August 16, 2016. Based on the court's description of the records it reviewed, we conclude there is nothing in the officers' sealed files that is relevant to the matters appellant sought to discover. The trial court properly discharged its duty with respect to appellant's *Pitchess* motion.

## III. DISPOSITION

The court's true finding under count 2, of assault by means of force likely to produce great bodily injury, is reversed. The judgment is otherwise affirmed.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

SIMONS, J.

(A150290)

Contra Costa County Superior Court, No. J1201378, Thomas M. Maddock, Judge.

L. Richard Braucher, by appointment of the Court of Appeal under the First District Appellate Project's independent case system for Defendant and Appellant C.D.

Attorney General, Xavier Becerra; Chief Assistant Attorney General Gerald A. Engler; Senior Assistant Attorney General Jeffrey M. Laurence; Supervising Deputy Attorney General, Donna M. Provenzano, Deputy Attorney General Violet M. Lee, on behalf of Plaintiff and Respondent.