HALLER, Acting P.J.
*340 Veronica Aguayo hit her elderly father about 50 times with a bicycle lock and chain, then threw a ceramic pot on his head. A jury found her guilty of assault with a deadly weapon other than a firearm ( Pen. Code, § 245, subd. (a)(1) ) and assault by means of force likely to produce great bodily injury (force-likely assault) ( Pen. Code, § 245, subdivision (a)(4) ).[1] The trial court placed her on probation. On appeal, Aguayo contends we must vacate her conviction for force-likely assault because it is a lesser included offense of assault with a deadly weapon. We reject this contention, and affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On the afternoon of August 8, 2017, 43-year-old Veronica Aguayo was working on her bicycle in her parents' yard. Her 72-year-old father (Father) turned on the sprinklers to water the plants, accidentally wetting Aguayo's cell phone charger. Aguayo began yelling expletives and insults at Father, who turned around to go back inside because he "didn't want to hear her mouth calling [him] names."
As Father turned, Aguayo hit him on the back with her bicycle lock and chain. Father grabbed the lock to prevent Aguayo from hitting him again, but as they struggled over the lock, Father slipped and let go of the chain. Aguayo then hit Father with the chain and lock about 15 times on the arms, chest, and head. Father again grabbed the lock, and during a struggle for possession, Aguayo fell to the ground, pulling Father with her.
On the ground, Aguayo began "hollering" for her mother (Mother) inside. Aguayo then grabbed a small ceramic pot and threw it at Father, striking his head exactly where he had previously had two brain surgeries. Father fell on top of Aguayo, grabbed a rock to hit her with, but thought better of it and threw the rock away. However, the rock ricocheted off the house and hit Aguayo.
Father got up to go back in the house, and another struggle ensued for possession of the chain and lock, which Father apparently won. As Aguayo picked up a rock to hit Father, Mother emerged from the front door and warned, "Don't do that." Aguayo discarded the rock, and Father tossed the chain and lock toward her. Aguayo picked up the chain and lock, and rode off on her bicycle. The whole encounter lasted between five minutes (according to Mother) and 30 minutes (according to Father), during which Father estimated he was hit about 50 times.
Mother called 911, and police and paramedics responded. Father was evaluated at the hospital and released with only minor treatment. Police apprehended Aguayo a few hours later during an unrelated traffic stop.
Aguayo was charged with three offenses: (1) elder abuse, with deadly-weapon and great-bodily-injury enhancement allegations (§§ 368, subd. (b)(1), 1192.7, subd. (c)(23), 12022, subd. (b)(1); count 1); (2) assault with a deadly weapon, with an enhancement allegation that she "personally *341 used a dangerous and deadly weapon, to wit: bicycle chain/lock" ( §§ 245, subd. (a)(1), 1192.7, subd. (c)(23) ; count 2); and (3) force-likely assault ( § 245, subd. (a)(4) ; count 3). After deliberating less than two hours, the jury found Aguayo guilty on both assault counts, and found true the deadly-weapon-use allegation attached to count 2. The jury was unable to reach a verdict on the elder abuse count, which the court ultimately dismissed at the prosecutor's request.
Although Aguayo was presumptively ineligible for probation, the court found she had untreated mental health issues that constituted unusual circumstances warranting probation. Accordingly, the court suspended imposition of sentence and placed Aguayo on three years' formal probation with a variety of terms and conditions, including that she spend 365 days in local custody. Despite having suspended imposition of sentence, the court sentenced Aguayo concurrently on counts 2 and 3, but stayed the sentence on count 3 under section 654.
Aguayo appeals.
DISCUSSION
Aguayo contends we must vacate her conviction for force-likely assault because it is a lesser included offense of assault with a deadly weapon. We disagree.
"In general, a person may be convicted of, although not punished for, more than one crime arising out of the same act or course of conduct." ( People v. Reed (2006) 38 Cal.4th 1224, 1226, 45 Cal.Rptr.3d 353, 137 P.3d 184 ( Reed ); see §§ 954,[2] 654;[3] People v. Sanders (2012) 55 Cal.4th 731, 736, 149 Cal.Rptr.3d 26, 288 P.3d 83 ( Sanders ); People v. Cady (2016) 7 Cal.App.5th 134, 139, 212 Cal.Rptr.3d 319 ( Cady ).) "However, a 'judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses.' " ( Sanders , at p. 736, 149 Cal.Rptr.3d 26, 288 P.3d 83 ; see Reed, supra , 38 Cal.4th at p. 1227, 45 Cal.Rptr.3d 353, 137 P.3d 184 ; Cady , at p. 139, 212 Cal.Rptr.3d 319.) "When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." ( Sanders , at p. 736, 149 Cal.Rptr.3d 26, 288 P.3d 83 ; Cady , at p. 139, 212 Cal.Rptr.3d 319.) "If neither offense is necessarily included in the other, the defendant may be convicted of both, 'even though under section 654 he or she could not be punished for more than one offense arising from the single act or indivisible course of conduct.' " ( Sanders , at p. 736, 149 Cal.Rptr.3d 26, 288 P.3d 83.)
*342 The courts "have established two tests for whether a crime is a lesser included offense of a greater offense: the elements test and the accusatory pleading test." ( People v. Gonzalez (2018) 5 Cal.5th 186, 197, 233 Cal.Rptr.3d 791, 418 P.3d 841.) The parties agree that "[i]n deciding whether multiple convictions are barred because one offense is a lesser included offense of the other, we apply the 'elements' test." ( Cady , supra , 7 Cal.App.5th at p. 140, 212 Cal.Rptr.3d 319 ; see Reed , supra , 38 Cal.4th at p. 1229, 45 Cal.Rptr.3d 353, 137 P.3d 184.) "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former." ( Reed , at p. 1227, 45 Cal.Rptr.3d 353, 137 P.3d 184 ; see Sanders , supra , 55 Cal.4th at p. 737, 149 Cal.Rptr.3d 26, 288 P.3d 83.) "In other words, ' "[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." ' " ( Sanders , at p. 737, 149 Cal.Rptr.3d 26, 288 P.3d 83 ; see Reed , at p. 1227, 45 Cal.Rptr.3d 353, 137 P.3d 184.) We apply the elements test "in the abstract," without regard to the "evidence introduced at trial." ( People v. Chaney (2005) 131 Cal.App.4th 253, 256, 31 Cal.Rptr.3d 714 ( Chaney ).)
Simple assault "is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Section 245 enumerates several forms of aggravated assault. We are concerned here with two of the forms specified in subdivision (a):
"(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished .... [¶] ... [¶]
"(4) Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished ...."
Using CALCRIM No. 875, the trial court instructed the jury regarding the elements of assault with a deadly weapon and force-likely assault. As instructed, the elements of assault with a deadly weapon are:
"1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person;
"2. The defendant did that act willfully;
"3. When the defendant acted, she was aware of facts that would lead a reasonable person to realize that her act by its nature would directly and probably result in the application of force to someone;
"4. When the defendant acted, she had the present ability to apply force with a deadly weapon other than a firearm[;] [¶] AND
"5. The defendant did not act in self-defense."[4]
The elements of force-likely assault are:
"1. The defendant did an act that by its nature would directly and probably result in the application of force to a person, and
"2. The force used was likely to produce great bodily injury;
"3. The defendant did that act willfully;
"4. When the defendant acted, she was aware of facts that would lead a reasonable person to realize that her act by its *343 nature would directly and probably result in the application of force to someone;
"5. When the defendant acted, she had the present ability to apply force likely to produce great bodily injury to a person. [¶] AND
"6. The defendant did not act in self-defense."
As to both offenses, the jury was instructed with CALCRIM No. 875 regarding the meaning of "force":
"The terms application of force and apply force mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind. [¶] ... [¶] The People are not required to prove that the defendant actually touched someone. [¶] The People are not required to prove that the defendant actually intended to use force against someone when she acted. [¶] No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was."
The elements of both offenses are, thus, substantially similar except for the first element of assault with a deadly weapon (doing an act with a deadly weapon), and the first and second elements of force-likely assault (doing an act that would probably result in the application of force to a person where the force is "likely to produce great bodily injury"). Force-likely assault, then, is only a lesser included offense of assault with a deadly weapon if every assault with a deadly weapon requires that the defendant use the weapon in a way that is likely to produce great bodily injury. Although that will often be the case, it is not necessarily so.
In People v. Aguilar (1997) 16 Cal.4th 1023, 68 Cal.Rptr.2d 655, 945 P.2d 1204 ( Aguilar ), the California Supreme Court addressed whether hands and feet can constitute deadly weapons under section 245. ( Aguilar , at p. 1026, 68 Cal.Rptr.2d 655, 945 P.2d 1204.) In doing so, the court explored the meaning of "deadly weapon" as used in section 245 :
"[A] 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citations.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue." ( Aguilar , at pp. 1028-1029, 68 Cal.Rptr.2d 655 [945 P.2d 1204].)
In light of this definition, the court explained that, "Ultimately, (except in those cases involving an inherently dangerous weapon ), the jury's decisionmaking process in an aggravated assault case under section 245, subdivision (a)(1),[5 ] is functionally *344 identical regardless of whether, in the particular case, the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force used." ( Aguilar , supra , 16 Cal.4th at p. 1035, 68 Cal.Rptr.2d 655, 945 P.2d 1204, italics added.) Thus, although the court concluded "a 'deadly weapon' within the meaning of section 245 must be an object extrinsic to the human body" ( id. at p. 1034, 68 Cal.Rptr.2d 655, 945 P.2d 1204 ), the court found the prosecutor's contrary closing argument was harmless because the jury necessarily engaged in the same analysis under either theory because the alleged weapons (hands and feet) were not inherently deadly and, thus, their deadly nature turned on the manner of their use. ( Id. at p. 1036, 68 Cal.Rptr.2d 655, 945 P.2d 1204 ["Regardless ... of which path the jury took, the same finding was necessary to a verdict of guilt."].)
But the Aguilar court explained that its reasoning equating assault with a deadly weapon and force-likely assault does not apply in the context of an inherently deadly weapon :
"We observe that, despite the identity of the jury's reasoning processes under either the 'deadly weapon' clause or the 'force likely' clause in this case, our holding does not reduce the former clause to surplusage. There remain assaults involving weapons that are deadly per se, such as dirks and blackjacks, in which the prosecutor may argue for, and the jury convict of, aggravated assault based on the mere character of the weapon ." ( Aguilar , supra , 16 Cal.4th at p. 1037, fn. 10, 68 Cal.Rptr.2d 655, 945 P.2d 1204, italics added.)
Justice Mosk wrote a concurring opinion synthesizing the Aguilar majority's reasoning:
"[ Section 245 ] punishes an assault committed either (1) with a 'deadly weapon or instrument' other than a firearm or (2) by means of any 'force likely to produce great bodily injury.' [¶] In turn, a 'deadly weapon or instrument' is either (1) a weapon that is deadly per se (e.g., a dagger) or (2) any 'object, instrument, or weapon' that is used in a way likely to produce death or great bodily injury (e.g., a hammer). [Citations.] [¶] Reading this definition back into the statute, we find that section 245... thus actually punishes an assault committed in any one of three ways: i.e., (1) with a weapon deadly per se, or (2) with an object used in a way likely to produce great bodily injury, or (3) by means of a force also likely to produce great bodily injury." ( Aguilar , supra , 16 Cal.4th at p. 1038 [68 Cal.Rptr.2d 655, 945 P.2d 1204] (conc. opn. of Mosk, J.).)
Aguilar 's distinction between inherently and noninherently deadly weapons is reflected in CALCRIM No. 875's definition of "deadly weapon," which states: "A deadly weapon other than a firearm is any object, instrument, or weapon that is [1] inherently deadly or [2] one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."
Applying these principles, we conclude force-likely assault is not a lesser included offense of assault with a deadly weapon because, although every force-likely assault must be committed in a way that is *345 likely to produce great bodily injury (either with or without a deadly weapon), there is a subset of assaults with deadly weapons-those committed with inherently deadly weapons-that are not necessarily likely to produce great bodily injury. The Attorney General posits the following illustration:
"For example, if a defendant cuts a single strand of a sleeping person's hair with an inherently dangerous weapon such as a dagger, he will have committed assault with a deadly weapon even if no evidence shows he used the dagger in a manner capable of causing or likely to cause death or great bodily injury. Although a defendant must do an act 'that by its nature would directly and probably result in the application of force to a person' ( CALCRIM [No.] 875 ), the 'terms application of force and apply force mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way.' (Ibid .) Moreover, the 'People are not required to prove that the defendant actually touched someone.' (Ibid .)" (Italics added.)
Aguayo maintains we are not bound by Aguilar because its discussion of inherently deadly weapons is merely dicta and it addressed an earlier version of section 245. We agree Aguilar is not binding , but we find its analysis highly persuasive because of the depth in which the court analyzed the interplay between deadly weapons and the use of force likely to produce great bodily injury. (See People v. Brown (2000) 77 Cal.App.4th 1324, 1336, 92 Cal.Rptr.2d 433 ["even dictum from our Supreme Court is considered 'highly persuasive' "].) And although section 245 was amended post- Aguilar to separate assault with a deadly weapon and force-likely assault into separate subdivisions, our court previously explained that "the Legislature made clear it was making only 'technical, nonsubstantive changes' to section 245 (Legis. Counsel's Dig., Assem. Bill No. 1026 (2011-2012 Reg. Sess.) ) to provide clarity for purposes of recidivist enhancements ...." ( Brunton , supra , 23 Cal.App.5th at p. 1107, 233 Cal.Rptr.3d 686.)
Aguayo relies heavily on In re Jonathan R. (2016) 3 Cal.App.5th 963, 208 Cal.Rptr.3d 159, which concluded force-likely assault is a lesser included offense of assault with a deadly weapon. ( Id. at pp. 971-972.) We decline to follow Jonathan R . First, it focuses primarily on noninherently deadly weapons, relegating to a single footnote its discussion of Aguilar 's recognition of inherently deadly weapons. ( Jonathan R ., at pp. 971-974 & fn. 5, 208 Cal.Rptr.3d 159.) In that footnote, the Jonathan R . court concludes that the use of inherently deadly weapons "necessarily involves the use of force likely to produce death or serious injury" because they " 'are "dangerous or deadly" to others in the ordinary use for which they are designed.' " ( Id. at p. 973-974, fn. 5, 208 Cal.Rptr.3d 159, italics added.) But as the Attorney General's example illustrates, there are nonordinary uses to which one can put an inherently deadly weapon (e.g., cutting a single strand of hair) without altering the weapon's inherently deadly character.[6] Second, as our court previously explained in Brunton , due to intervening California Supreme Court authority, we place less weight on the intervening amendment to section 245 than did the Jonathan R . court. (See Brunton , supra , 23 Cal.App.5th at pp. 1106-1107, 233 Cal.Rptr.3d 686.)
*346 Aguayo argues we should follow Jonathan R . here because a different panel of our court applied it in an admittedly different context in In re Jose S. (2017) 12 Cal.App.5th 1107, 219 Cal.Rptr.3d 801. We are not persuaded. In Jose S. , a former ward of the juvenile court sought to seal his juvenile criminal record, which included an admission of assault with a deadly weapon (a knife). ( Id. at p. 1112.) The juvenile court concluded his record was ineligible for sealing because his assault conviction was a disqualifying offense under the statutory sealing scheme. ( Id. at p. 1112-1113, 219 Cal.Rptr.3d 801.) On appeal, the appellant argued (for the first time) his assault conviction was not disqualifying because the sealing statute enumerated assault with a firearm and force-likely assault, but not assault with a deadly weapon (the offense he admitted). ( Id. at p. 1121, 219 Cal.Rptr.3d 801.) In rejecting this argument, our court noted the juvenile court was authorized to consider not only the allegations of the charging document, but also the facts and circumstances of the actual offense. ( Id. at p. 1122, 219 Cal.Rptr.3d 801.) In that light, our court concluded the juvenile court was justified in concluding the defendant's assault with a deadly weapon "amounted to" and "encompasse[d]" force-likely assault because the evidence supported the factual finding that "[t]he knife used by [the minor] was capable of causing, and did cause, great bodily injury." ( Id. at pp. 1122-1123, 219 Cal.Rptr.3d 801.) In that sense, the manner in which the minor committed the assault with a deadly weapon was also likely to produce great bodily injury and, thus, was tantamount to a force-likely assault.
Here, unlike in Jose S., we are not authorized to consider the facts and circumstances of the offense. Rather, we must apply the elements test "in the abstract," without regard to the "evidence introduced at trial." ( Chaney , supra , 131 Cal.App.4th at p. 256, 31 Cal.Rptr.3d 714.) Thus, Jose S. is inapposite.
In sum, because an assault can be committed with an inherently deadly weapon without necessarily using force likely to produce great bodily injury, force-likely assault is not a lesser included offense of assault with a deadly weapon.
In her reply brief, Aguayo raises for the first time the alternative argument that even if we conclude (as we have) that force-likely assault is not a lesser included offense of assault with a deadly weapon, we must nonetheless vacate her conviction for force-likely assault because it is based on the same act as the assault with a deadly weapon conviction. This argument fails for several reasons. First, "[o]rdinarily, we do not consider arguments raised for the first time in a reply brief." ( People v. Mickel (2016) 2 Cal.5th 181, 197, 211 Cal.Rptr.3d 601, 385 P.3d 796.) Aguayo has given us no reason to depart from this practice. Second, Aguayo has not sufficiently developed the argument or supported it with citations to supporting legal authority. (See In re Groundwater Cases (2007) 154 Cal.App.4th 659, 690, fn. 18, 64 Cal.Rptr.3d 827 [failure to develop an argument or cite any authority in support of a contention results in the forfeiture of the issue on appeal].) Finally, the only case Aguayo cites in support of her argument, Brunton , supra , 23 Cal.App.5th 1097, 233 Cal.Rptr.3d 686, is readily distinguishable. There, our court concluded convictions for force-likely assault and assault with a deadly weapon were impermissibly duplicative because they were both based on the defendant's single act -"choking his cellmate with a tightly rolled towel." ( Id. at p. 1099, 233 Cal.Rptr.3d 686.) Here, however, Aguayo's convictions are based on multiple acts -hitting her father with the bicycle chain *347 and lock, and hitting him with the ceramic pot.
DISPOSITION
Affirmed.
WE CONCUR:
IRION, J.
DATO, J.

Statutory references are to the Penal Code unless otherwise noted. For convenience, we will use the phrase "deadly weapon" to refer to a deadly weapon other than a firearm , unless otherwise noted.

Section 954, which addresses multiple convictions, states in part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts .... The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court ...."

Section 654, subdivision (a), which prohibits multiple punishments, states: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

The court included this optional self-defense element because Aguayo testified she struck her father with the chain and lock only because he lunged at her while she was swinging the chain defensively.

When Aguilar was decided, assault with a deadly weapon and force-likely assault were both contained in subdivision (a)(1) of former section 245. (Aguilar , supra , 16 Cal.4th at p. 1028, 68 Cal.Rptr.2d 655, 945 P.2d 1204.) The Legislature subsequently split them into subdivisions (a)(1) and (a)(4), respectively. (Stats. 2011, ch. 183, § 1; see People v. Brunton (2018) 23 Cal.App.5th 1097, 1104, 233 Cal.Rptr.3d 686, rehg. den. June 11, 2018, petn. for review pending, petn. filed July 5, 2018 (Brunton ).) As we explain below, this legislative amendment does not alter our analysis.

By analogy, an individual can commit an assault with a semiautomatic firearm (§ 245, subd. (b) ) even if the firearm is unloaded and used as a mere bludgeon. (See People v. Miceli (2002) 104 Cal.App.4th 256, 270, 127 Cal.Rptr.2d 888.)