Filed 12/30/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re L.J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>L.J.,<br><br>　　　Defendant and Appellant. | A161118<br><br>(Contra Costa County Super. Ct. No. J20-00455) |

THE COURT:

It is ordered that the opinion filed herein on November 30, 2021, be modified as follows:

1.　　On page 8, at the end of the second complete paragraph, add footnote No. 4, which will read:

> The Legislature recently enacted Assembly Bill No. 518 (2021–2022 Reg. Sess.), which amends Penal Code section 654, subdivision (a) to eliminate the requirement that a trial court punish a defendant under the provision that provides for the longest potential term of imprisonment. (Stats. 2021, ch. 441, § 1.) In a request to modify our opinion, the minor contends that he will be entitled to the benefit of the amended statute on remand. We express no opinion on that question, and nothing in our opinion is intended to prevent the minor from raising the argument in the juvenile court.

1

2.	The remaining footnotes shall be renumbered to run consecutively from the newly added footnote.

There is no change in judgment.

Date: _____ _____ P. J.

Filed 11/30/21 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re L.J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>L.J.,<br><br>        Defendant and Appellant. | A161118<br><br>(Contra Costa County Super. Ct. No. J20-00455) |

L.J. (the minor) appeals from the juvenile court's dispositional order committing him to a county institution and imposing probation conditions.  The juvenile court sustained a petition alleging the minor came within the court's jurisdiction under Welfare and Institutions Code section 602, subdivision (a) for reckless evasion of a peace officer in violation of Vehicle Code section 2800.2, subdivision (a) (count 1); assault with a deadly weapon (deadly weapon assault) on a peace officer in violation of Penal Code[1] section 245, subdivision (c) (count 2); and assault with force likely to produce great bodily injury (force-likely assault) in violation of section 245, subdivision (a)(4) (count 3). He contends (1) the punishment for the reckless evasion count

_____

[1] Undesignated statutory references are to the Penal Code.

1

and one of the assault counts must be stayed under section 654 because all of the counts were based on an indivisible course of conduct committed against the same victims; (2) the finding on the count of force-likely assault must be vacated under section 954 because it is a lesser included offense of deadly weapon assault on a peace officer and is based on the same conduct; (3) the juvenile court failed to designate counts 1 and 3, which are wobblers,[2] as felonies or misdemeanors; and (4) one of the probation conditions is unconstitutionally vague and overbroad.

We agree with the minor that the punishment on the reckless evasion of police count must be stayed under section 654 because it is based on the same indivisible course of conduct with the same intent and objective as the assault counts. We also agree with the minor's third argument that the juvenile court failed to designate counts 1 and 3 as felonies or misdemeanors. We reject the minor's remaining arguments. We will therefore remand this case with appropriate instructions.

## BACKGROUND

In August 2020, Antioch police officers responded to a call about a prowler in a residential neighborhood. The officers tried to stop a Pontiac sedan they found in the neighborhood that the caller had identified, but the Pontiac did not stop. Several police officers in different vehicles then pursued the Pontiac.

---

[2] "A wobbler is a crime that can be punished as either a felony or a misdemeanor." (*In re G.C.* (2020) 8 Cal.5th 1119, 1122, fn. 1.)

Early in the pursuit, the Pontiac came to the end of a dead-end street. The Pontiac turned around and stopped facing three patrol vehicles, which were two car lengths away. The street was approximately the width of three vehicles. One police vehicle was on the right edge of the roadway facing the Pontiac, a second vehicle was offset behind the first and partially in the left lane, and the third vehicle was behind the first. There was sufficient space for the Pontiac to drive past and get around the police vehicles without hitting or interfering with them. The officer driving the first vehicle started to exit his vehicle with his firearm drawn to stop the driver of the Pontiac.

The Pontiac accelerated towards the officers at 10 to 15 miles per hour. The Pontiac struck the driver's door on the first vehicle as the officer opened it, slamming the door on the officer's ankle and trapping his foot, and causing a small scrape or dent on the bottom of the door.[3] The Pontiac then hit the front bumper on the passenger's side of the second vehicle, causing no noticeable damage. The Pontiac veered to the left of the third vehicle to try to avoid hitting it head on, but still sideswiped and scratched the third vehicle on the driver's side.

The officers resumed the pursuit of the Pontiac in their three patrol vehicles. After an extended chase by police vehicles and pursuit by a California Highway Patrol helicopter, law enforcement officers eventually apprehended the three occupants

---

[3] The officer experienced pain but did not sustain any visible injuries or see a doctor.

of the Pontiac, one of whom was the minor. Law enforcement officers later identified the minor as the driver of the Pontiac.

The People filed a petition alleging the minor came within the court's jurisdiction under Welfare and Institutions Code section 602, subdivision (a) for committing three felonies: evasion of a peace officer while driving in willful disregard of others in violation of Vehicle Code section 2800.2, subdivision (a) (count 1); deadly weapon assault on a peace officer in violation of section 245, subdivision (c) (count 2); and force-likely assault in violation of section 245, subdivision (a)(4) (count 3). After a contested jurisdictional hearing, the court sustained the petition as to all three counts. At the dispositional hearing, the court ordered the minor committed to a county institution until the earliest of the age of 21 or the maximum custody time of six years and eight months. The court further ordered that the minor participate in the Youth Offender Treatment Program. The court imposed various probation conditions, one of which was that the minor was "to report any police contact related to criminal activity and any arrests to [a probation officer] within 24 hours."

## DISCUSSION

### I. Section 654

Section 654, subdivision (a) states in pertinent part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "Th[is] section applies to juvenile court proceedings."

4

(*In re Jesse F.* (1982) 137 Cal.App.3d 164, 170.) "Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

" 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.' . . . [¶] 'Whether the facts and circumstances reveal a single intent and objective within the meaning of Penal Code section 654 is generally a factual matter; the dimension and meaning of section 654 is a legal question.' " (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1414.) "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) We review for substantial evidence a trial court's implied finding that a defendant had separate

5

intents and objectives for different offenses. (*Dowdell*, at p. 1414.)

## A. *Separate intents and objectives*

The minor raises two arguments under section 654. First, he contends his punishment for evading a police officer while driving in willful disregard of others must be stayed because it is based on the same course of conduct as the assault counts. The minor argues that his collisions with the officers' vehicles, which constitute the basis for the sustained assault allegations, constitute part of his attempt to evade them, so that both the evasion and the assaults had the single objective of eluding the police. We agree.

The reckless evasion count is based on the same course of conduct as the assaults, as the assaults occurred during the extended flight from the police. The evidence does not support a finding that the minor's assaults on the officers were based on different intents and objectives than the minor's overall purpose of trying to evade the police officers. The low speed of the Pontiac (10 to 15 miles per hour), together with the fact that the minor evidently slalomed between the three police vehicles and struck them largely on the sides of the Pontiac and not head-on, indicates the minor was trying to get past the police vehicles rather than targeting them. The officer in the third vehicle admitted that at one point the Pontiac was approaching him dead-on, but the Pontiac veered to the side to avoid striking the third police vehicle. The lack of significant damage—a small scrape or dent on one car, no damage to the second, and a scratch

6

to the third—indicates the minor was trying to evade the police. Especially when considered in light of the minor's youth, the assaults reflect a clumsy and ill-advised attempt to escape the blockade at the end of the dead-end street, rather than an intent to injure the officers or damage their vehicles that was separate from the goal of escape.

The Attorney General stresses that the road was wide enough to allow the Pontiac to pass the vehicles without striking them. This does not demonstrate that the intent or objective of the assaults was different from the objective of evading the police. The road was only three car-widths wide, and the police vehicles were on the right side and in the middle of it. The minor's failure to avoid contact with the police vehicles in such tight quarters indicates only the minor's attempt to elude the police at 10 to 15 miles per hour, not a deliberate targeting of the vehicles. The contact along the sides of the Pontiac and the police vehicles was so slight that it is unreasonable to think the minor had a separate intent to assault the officers.

The facts of this case may be contrasted with *People v. Jimenez* (2019) 32 Cal.App.5th 409, on which the Attorney General relies. There, a defendant fleeing from one law enforcement vehicle during a chase turned a corner and began driving towards a second law enforcement vehicle coming in the opposite direction. (*Id.* at pp. 413–414.) The defendant drove on the wrong side of the road in an attempt to intimidate the oncoming vehicle. (*Id.* at pp. 414, 425.) The Court of Appeal found substantial evidence supported the trial court's implied

finding that the defendant had separate intents to flee the pursuing officers and assault the oncoming officers. (*Id.* at p. 425.) The court also held that the defendant had time to reflect because he could have avoided driving toward the oncoming vehicle. (*Id.* at p. 426.)

Here, the minor took no action as dangerous as driving into oncoming traffic, and, in fact, attempted to avoid striking the third vehicle by veering away from it. The time from when the Pontiac reached the end of the road and the officer got out of the first vehicle to when the Pontiac took off was very brief. The contact between the Pontiac and the police vehicles was incidental to the overall purpose of escaping the dead-end street.

Because the charge of reckless evasion of a police officer in violation of Vehicle Code section 2800.2, subdivision (a) does not carry the highest punishment, the punishment for that count must be excluded from the calculation of the minor's maximum time of confinement. (§ 654, subd. (a) [act must be punished under the provision that provides for the longest potential term of imprisonment]; Veh. Code, § 2800.2 [punishable by six months to one year in county jail or imprisonment]; § 245, subd. (a)(4) [punishable by two, three, or four years in prison or one year in county jail]; § 245, subd. (c) [punishable by three, four, or five years in prison].)

## B.  *Multiple Victims and Section 654*

The minor next argues that section 654 requires the exclusion of one of his assault counts from his maximum time of confinement. The minor recognizes that "section 654 does not

8

apply to crimes of violence against multiple victims.  [Citation.]  The reason is that " '[a] defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." ' " (*People v. Correa* (2012) 54 Cal.4th 331, 341, fn. omitted.)  But the minor contends the multiple victim exception does not apply here because the same three officers were the victims of both assault charges.  He cites *People v. Cardenas* (2015) 239 Cal.App.4th 220, 230, which stated, "To preclude application of section 654, however, each of the crimes must have involved at least one different victim."  According to the minor, this means at least one victim of the conviction for force-likely assault in violation of section 245, subdivision (a)(4) must be a different, separate victim of the conviction for deadly weapon assault on a peace officer in violation of section 245, subdivision (c).

"The multiple victim exception, simply stated, permits one unstayed sentence per victim of all the violent crimes the defendant commits incidental to a single criminal intent." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1784.)  The juvenile court found the minor committed assault against three different police officers.  The minor could therefore have been punished separately for each victim of his assaults without violating section 654.  This would be consistent with the rationale of the multiple-victim exception, which is to recognize the greater culpability of a defendant whose actions harm or threaten to

harm multiple people. (*People v. Correa*, *supra*, 54 Cal.4th at p. 341.)

The prosecutor charged the minor with only two counts of assault on the same three officers in each count, but that does not change the application of the multiple-victim exception, as *People v. Garcia*, *supra*, 32 Cal.App.4th 1756 demonstrates. There, the defendant was convicted of shooting at an occupied motor vehicle and assaulting the four victims inside. (*Id.* at pp. 1762–1763.) The trial court imposed a sentence on the defendant for the count of shooting at an occupied motor vehicle and for the assault on one of the occupants, staying the charges for the other three assault counts. (*Id.* at pp. 1764–1765.) The Court of Appeal rejected the defendant's argument that this sentence violated section 654. (*Id.* at p. 1785.) As relevant here, the court explained, "Where one person is the victim of both a shooting at an occupied motor vehicle and a simultaneous assault, the trial court can impose an unstayed sentence for one or the other, but not for both. [Citations.] We believe this is equally true where the same *persons* are the victims of a shooting at an occupied motor vehicle and of simultaneous *assaults*: the trial court can impose an unstayed sentence for the shooting, based on any given victim, or for the assault on that victim, but not for both." (*Id.* at p. 1784.) *Garcia* demonstrates that the relevant consideration is the total number of victims and charges, not the overlap between victims in various charges.

We recognize that in *People v. Centers* (1999) 73 Cal.App.4th 84, 101–102, which the minor cites, the court

10

upheld punishments for two different counts where the victims in each count overlapped only partially, rather than completely as they do here. This distinction, however, is not significant. The rationale in *Centers* was that the defendant could be punished based on the number of victims, and the degree of overlap was relevant to show the defendant was punished only once per victim. *Centers* did not hold that the result would have been different if the same group of people were the victims of each count.

The minor's theory that complete overlap of victims bars multiple punishments would lead to absurd results. It would mean a defendant who committed two crimes against the same two victims would be punished less severely than a defendant who committed two crimes against one victim and one crime against a second victim. It would also allow a prosecutor to selectively increase the punishment for a defendant simply by choosing not to charge or prove the defendant's guilt on a crime as to one of the victims, to avoid a complete overlap of victims. Thus, the prosecutor in this case could have avoided the reach of section 654 (as interpreted by the minor) by charging him with force-likely assault as to two officers and deadly weapon assault on a peace officer as to three officers. Such outcomes are contrary to the purpose of the multiple-victim exception, which is to increase punishment based on harm or threat of harm to more people. We therefore hold that section 654 does not prohibit the minor's punishment for both assault counts.

11

## II. Section 954

"Section 954 provides as relevant here: 'An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . .' Under section 954, as [the Supreme Court has] interpreted it, 'a defendant properly may be convicted of two offenses if neither offense is necessarily included in the other, even though under section 654 he or she could not be punished for more than one offense arising from the single act or indivisible course of conduct.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 636–637, fn. omitted (*Vidana*).) Additionally, " '[t]he most reasonable construction of the language in section 954 is that the statute authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*Id.* at p. 650.) Thus, section 954 permits multiple convictions based on the same conduct except when the convictions rest on different statements of the same offense or when a statement of one offense is necessarily included within another. We review the application of section 954 de novo. (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646.)

12

The minor contends that both the exceptions to section 954 prohibit the court from convicting him of both force-likely assault under section 245, subdivision (a)(4) and deadly weapon assault on a peace officer under subdivision (c). He presents two alternative paths to this conclusion, relying on the holding in *People v. McElheny* (1982) 137 Cal.App.3d 396, 406 that deadly weapon assault is a lesser included offense of deadly weapon assault on a peace officer under subdivision (c). In one argument, he contends force-likely assault is a lesser included offense of deadly weapon assault, so by extension it must also be included within deadly weapon assault on a peace officer. In the other, the minor contends that force-likely assault is a statement of the same offense as deadly weapon assault, so force-likely assault "should be treated as a lesser included offense of" deadly weapon assault on a peace officer for purposes of section 954. We are not persuaded by either contention.

### A. Lesser included offense

For the minor's first argument, one offense is necessarily included within another "if the statutory elements of the greater offense include all of the statutory elements of the lesser offense." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) Construing substantially similar language in a former version of the statute, *In re Mosely* (1970) 1 Cal.3d 913, 919, fn. 5, stated that force-likely assault is not a lesser included offense of deadly weapon assault. More recently, *People v. Aguayo* (2019) 31 Cal.App.5th

13

758, 766, review granted May 1, 2019, S25454 (*Aguayo*),[4] reached the same conclusion under the current version of the statute. Both decisions contradict the minor's argument.

Aguayo relied in large part on *People v. Aguilar* (1997) 16 Cal.4th 1023 (*Aguilar*). (*Aguayo, supra*, 31 Cal.App.5th at pp. 765–767.) Construing an earlier version of the statute (see *Aguayo*, at p. 765, fn. 5), *Aguilar* held that "except in those cases involving an inherently dangerous weapon," a jury's decision when considering force-likely and deadly weapon assault is "functionally identical regardless of whether, in the particular case, the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force

---

[4] The Supreme Court originally deferred briefing in *People v. Aguayo*, review granted May 1, 2019, S254554, pending resolution of *People v. Aledamat*, review granted July 5, 2018, S248105. (*People v. Aguayo* (2019) 439 P.3d 764; see Cal. Rules of Court, rules 8.512(d)(2), 8.520.) After the Supreme Court issued its decision in *People v. Aledamat* (2019) 8 Cal.5th 1, the court ordered the parties in *Aguayo* to brief the following questions: "Is assault by means of force likely to produce great bodily injury a lesser included offense of assault with a deadly weapon? If so, was defendant's conviction of assault by means of force likely to produce great bodily injury based on the same act or course of conduct as her conviction of assault with a deadly weapon?" (*People v. Aguayo* (Nov. 20, 2019, S254554) 2019 Cal. Lexis 8785.) In April 2020, the Court ordered the parties to file supplemental briefs "addressing the following questions: 'Are Penal Code section 245, subdivision (a)(1) and section 245, subdivision (a)(4) merely different statements of the same offense for purposes of section 954? If so, must one of defendant's convictions be vacated?'" (*People v. Aguayo* (Apr. 22, 2020, S254554) 2019 Cal. Lexis 2769.)

14

used." (*Aguilar*, at p. 1035.) But *Aguilar* noted that deadly weapon assault was not duplicative of force-likely assault, because "[t]here remain assaults involving weapons that are deadly per se, such as dirks and blackjacks, in which the prosecutor may argue for, and the jury convict of, aggravated assault based on the mere character of the weapon." (*Id.* at p. 1037, fn. 10.)

*Aguayo* concluded from *Aguilar* that "although every force-likely assault must be committed in a way that is likely to produce great bodily injury (either with or without a deadly weapon), there is a subset of assaults with deadly weapons—those committed with inherently deadly weapons—that are not necessarily likely to produce great bodily injury." (*Aguayo*, *supra*, 31 Cal.App.5th at p. 766.) In other words, because one element of force-likely assault is that the force used be likely to produce great bodily injury, while not every use of a deadly weapon is necessarily likely to produce such injury, force-likely assault is not a lesser included offense of deadly weapon assault. (See *ibid.*)

The minor distinguishes *Aguayo* on its facts, noting that the defendant's convictions there were based on hitting the victim with multiple different objects. (*Aguayo*, *supra*, 31 Cal.App.5th at p. 768.) We consider the facts of the minor's offense only to decide if the minor has established the threshold condition for application of section 954, namely, that he suffered multiple convictions based on the same act or course of conduct. (See *Vidana*, *supra*, 1 Cal.5th at pp. 637, 647–648.) The test for lesser included offenses, however, focuses on the elements of offenses in

15

the abstract and not their factual predicate in a specific case. (*People v. Reed*, *supra*, 38 Cal.4th at p. 1229 ["In deciding whether multiple conviction is proper, a court should consider only the statutory elements"].)  The facts of the offenses here and in *Aguayo* are thus irrelevant to the elements-based question of whether force-likely assault is a lesser included offense of deadly weapon assault under the elements test.

The minor urges us to follow *In re Jonathan R.* (2016) 3 Cal.App.5th 963, 970, 973–974, which held that force-likely assault is not a statement of the same offense as deadly weapon assault but is a lesser included offense of it.  *Jonathan R.* focused on *Aguilar*'s statement that "there is a 'fundamental identity of the concepts of assault with a deadly weapon and assault by means of force likely to produce great bodily injury.'  ([*Aguilar*,] at p. 1036.)"  (*Jonathan R.*, at p. 973.)  In a footnote, *Jonathan R.* declared the same was true of assault with an inherently deadly weapon, because such weapons " 'are "dangerous or deadly" to others in the ordinary use for which they are designed' " so that "[u]se of these weapons necessarily involves the use of force likely to produce death or serious injury." (*Jonathan R.*, at p. 973, fn. 5.)

Like *Aguayo*, we decline to follow *Jonathan R.*  (*Aguayo*, *supra*, 31 Cal.App.5th at p. 767.)  *Jonathan R.* relies on *Aguilar*'s reasoning about the similarity between force-likely and deadly weapon assaults while ignoring *Aguilar*'s explicit exception that prevented the two concepts from collapsing into one and making one concept surplusage.  As *Aguayo* pointed out, *Aguilar*

16

recognized this exception because "there are nonordinary uses to which one can put an inherently deadly weapon . . . without altering the weapon's inherently deadly character." (*Aguayo*, *supra*, 31 Cal.App.5th at p. 767, italics omitted.) In a hypothetical described in *Aguayo*, which the Attorney General repeats here, " 'a defendant cuts a single strand of a sleeping person's hair with an inherently dangerous weapon such as a dagger.' " (*Id.* at p. 766.) A dagger is *capable* of producing great bodily injury, and thus a defendant's use of it in this scenario would prove deadly weapon assault (assuming the other elements were met). But because the defendant did not use the dagger in a manner *likely* to cause great bodily injury, the defendant would not have committed force-likely assault. (*Id.* at pp. 766–767.) Thus, because force-likely assault's element of use of force likely to cause great bodily injury is not necessarily included within deadly weapon assault, the former is not a lesser included offense of the latter.

## B. *Statement of the same offense*

The minor's second argument under section 954, that force-likely assault is a statement of the same offense as deadly weapon assault and therefore also included within deadly weapon assault on a peace officer under section 245, subdivision (c), also fails under our Supreme Court's cases. To determine whether one statutory provision describes the same offense as another such that conviction on both offenses would be barred, the Supreme Court first considers whether the two provisions have the same elements or one is a lesser included offense of the

other.[5] (*People v. White* (2017) 2 Cal.5th 349, 357 [noting of section 261, subdivisions (a)(3) and (a)(4)(A), " 'neither offense is included within the other' "]; *Vidana, supra*, 1 Cal.5th at p. 648 ["Larceny and embezzlement have different elements and neither is a lesser included offense of the other"]; *People v. Gonzales* (2014) 60 Cal.4th 533, 539 (*Gonzalez*) [noting of section 288, subdivisions (f) and (i), "neither offense is included within the other"].) The Supreme Court also examines the two provisions' textual structure. (*Gonzales*, at p. 539.) In *White* and *Vidana*, the Court went on to consider whether the legislative history and historical context showed that the Legislature intended the provisions to describe a single offense, despite the provisions' dissimilarity of elements and separate structure. (*White*, at pp. 358–359 [considering legislative history]; *Vidana*, at p. 648 [same].)

These cases demonstrate that unlike the test for whether one offense is included within another (which depends on the elements of the offenses), the test for whether two provisions are statements of the same offense depends ultimately on legislative structure and intent. Thus, in *Vidana, supra*, 2 Cal.5th at pages 648–649, the court concluded that larceny and embezzlement were statements of the same offense, even though they have different elements and neither is included within the other,

---

[5] Presumably, this is because section 954 also bars two convictions where one was included within the other (*Vidana, supra*, 1 Cal.5th at pp. 636–637), so if one provision is included within another there is no need to consider whether the provisions state a single offense.

18

because other indicia of legislative intent pointed to that result. The determination that two provisions are statements of the same offense is therefore analytically distinct from the question of whether, under the elements test, the first provision is a lesser included offense of all the same offenses as the second. The different tests cause the two concepts to operate independently.

Applying the Supreme Court's framework to force-likely and deadly weapon assault demonstrates the point. We have already concluded that force-likely and deadly weapon assault have different elements, so that force-likely assault is not a lesser included offense of deadly weapon assault. The only way for force-likely assault to be a statement of the same offense as deadly weapon assault would be if there were some indication in section 245's structure, historical context, or legislative history that the Legislature intended this result. Section 245's history and context may in fact demonstrate this intent, as described in *People v. Cota* (2020) 44 Cal.App.5th 720, 724–729, review granted April 22, 2020, S261120, briefing deferred pursuant to rule 8.512(d)(2), Cal. Rules of Court, pending disposition of *People v. Aguayo*, S254554. But even if *Cota* were correct on this score (which we need not and do not decide), force-likely and deadly weapon assault would be statements of the same offense *despite* having *different* elements, not *because* they have the *same* elements. Since the elements of these two types of assault are analytically irrelevant to the question of whether they are statements of the same offense, there is no reason to treat force-likely assault as included within assault with a deadly weapon on

19

a peace officer under section 245, subdivision (c), even if deadly-weapon assault is a lesser included offense of that charge. Accordingly, there is no merit to defendant's argument that he may not be found to have committed both force-likely assault and assault with a deadly weapon on a peace officer.

## III. Designation as felonies or misdemeanors

Welfare and Institutions Code section 702 states that after a juvenile court finds that a minor is described by section 602, as the court did here, the juvenile court "shall then proceed to hear evidence on the question of the proper disposition to be made of the minor." The same statute further requires, "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." (Welf. & Inst. Code, § 702.) "It is well established that section 702's requirement is 'obligatory' rather than 'merely "directory" ' [citation] and requires an explicit declaration [citation]. It is not sufficient that the offenses were identified as felonies in the wardship petitions and in the minute order of the jurisdictional hearing, or that they were treated as felonies for purposes of calculating the maximum term of confinement." (*In re G.C.*, *supra*, 8 Cal.5th at p. 1125.)

The minor argues, the Attorney General concedes, and we agree that an adult's conviction for reckless evasion of a police officer in violation of Vehicle Code section 2800.2, subdivision (a) (count 1) or force-likely assault in violation of section 245, subdivision (a)(4) (count 3) may be punished as either a felony or

20

misdemeanor, so Welfare and Institutions Code section 702 required the juvenile court to designate those offenses as one or the other. The juvenile court failed to do so. The juvenile court's calculation of the maximum term of confinement indicates that it treated the offenses as felonies, but under *In re G.C., supra,* 8 Cal.5th at page 1125, that is insufficient. Accordingly, we must remand this case for the juvenile court to make the required finding. (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1211.)

## IV. Probation condition

The minor challenges the juvenile court's imposition of a probation condition requiring the minor to "report any police contact related to criminal activity and any arrests to the Deputy Probation Officer within 24 hours." The minor argues this condition is unconstitutionally vague and overbroad.

"The juvenile court has wide discretion to select appropriate conditions and may impose ' "any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' " ' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Id.* at p. 890.)

"The vagueness doctrine ' "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " [Citations.]' [Citation.]  A vague law 'not only fails to provide adequate notice to those who must observe its strictures, but also "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." [Citation.]' [Citation.]  In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific context,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' " (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  We review de novo a challenge to a probation condition on the grounds of vagueness or overbreadth.  (*People v. Stapleton* (2017) 9 Cal.App.5th 989, 993.)

The minor's vagueness and overbreadth arguments rely primarily on *In re I.M.* (2020) 53 Cal.App.5th 929.  There, a juvenile court imposed a probation condition requiring a minor to " 'to report any police contacts' to the deputy probation officer within 24 hours." (*Id.* at p. 931.)  The Court of Appeal held this condition was vague and overbroad because it " 'does indeed leave one to guess what sorts of events and interactions qualify as reportable,' " and " 'casts an excessively broad net over what would otherwise be activity not worthy of reporting.' " (*Id.* at

22

p. 936.)  The Court of Appeal rejected a suggested modification of the condition to require the minor to report " 'any police contacts related to criminal activity, arrests, or an officer's request for the minor's identification.' " (*Ibid.*)  The court explained, "[T]his proposed modification remains vague as it does not indicate whether appellant is required to report police contacts concerning criminal activities and arrests based solely on her own conduct or whether it also includes criminal activities and arrests of other persons which appellant may witness." (*Ibid.*)

The minor asserts the condition the juvenile court imposed here is identical to that in *In re I.M.*, but this is inaccurate.  The condition in *In re I.M.*, *supra*, 53 Cal.App.5th at page 931, required a minor to report "any contacts," which could include innocent contact with police officers such as requests for directions.  (Cf. *People v. Relkin* (2016) 6 Cal.App.5th 1188, 1197 [concluding a similar instruction would apply if a "defendant says 'hello' to a police officer"].)  Here, the condition applies to police contacts "related to criminal activity."  This narrows the scope of potential contacts that require reporting and makes clearer to the minor what is required of him.  The minor hypothesizes that the condition does not tell him whether he would have to report attending a Black Lives Matter demonstration where police officers were present and other people were teargassed, arrested, or detained.  The minor's hypothetical does not involve any police contact with the minor, merely presence near police officers, so the condition by its own terms would not apply.  If the minor were to speak to the police about the arrests or detention of

23

others at this hypothetical rally, though, the condition would apply, since the minor would have the requisite contact with the police and the arrests and detention would indicate the police officers involved believed criminal activity had taken place.

*In re I.M.* believed a condition like this would be unconstitutional because it does not indicate whether it is limited to criminal activity based on the minor's own conduct or whether it includes crimes that the minor may witness. (*In re I.M.*, *supra*, 53 Cal.App.5th at p. 936.) We disagree. Giving the condition a meaning apparent to a reasonable, objective reader (*People v. Olguin* (2008) 45 Cal.4th 375, 382) and requiring only " ' "*reasonable* specificity" ' " (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890), the lack of any limitation regarding the parties responsible for the criminal activity indicates that the condition applies to both kinds of criminal activity.

Contrary to the minor's contentions, however, the condition does not sweep too broadly. The purpose of juvenile probation conditions is to enhance the reformation and rehabilitation of a minor. (Welf. & Inst. Code, § 730, subd. (b).) The condition does not require the minor to report casual, inconsequential interactions with law enforcement officers, but instead limits reports to those interactions that might indicate whether the minor's lifestyle is such that he is present when criminal activity occurs. (Cf. *People v. Relkin*, *supra*, 6 Cal.App.5th 1188, 1197 [finding probation condition overbroad because it was not limited to the latter type of contact].) If the minor is present when criminal activity takes place, even if perpetrated by others, it

24

could indicate to a probation officer that the minor was associating with individuals likely to hinder his reformation. This demonstrates the condition is sufficiently narrowly tailored to the purpose of probation conditions.[6]

## DISPOSITION

The matter is remanded to the juvenile court with instructions to designate counts 1 (reckless evasion of a peace officer in violation of Vehicle Code section 2800.2, subdivision (a)) and 3 (force-likely assault in violation of section 245, subdivision (a)(4)) as felonies or misdemeanors and to exclude count 1 from the calculation of the minor's maximum time of confinement.[7]  In all other respects, the judgment is affirmed.


BROWN, J.


WE CONCUR:

STREETER, ACTING P. J.
ROSS, J.[*]

---

[6] We express no view on whether the challenged probation condition would survive scrutiny if applied to an adult.

[7] After briefing was complete, the minor asked for leave to file a supplemental brief arguing for the retroactive application of Senate Bill No. 92 (2021–2022 Reg. Sess.), which amended Welfare and Institutions Code section 726 to change the calculation of the maximum term of confinement.  (Stats. 2021, ch. 18, § 7.)  We denied that application, because the minor may raise that argument on remand when the juvenile court recalculates the minor's maximum time of confinement and designates counts 1 and 3 as misdemeanors or felonies.

[*] Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25

Trial Court:        Contra Costa County Superior Court

Trial Judge:        Hon. Barbara Hinton

Counsel:

Carrie Kojimoto, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Jeffrey M. Laurence, Assistant Attorneys General, Eric D. Share, Katie L. Stowe, Deputy Attorneys General, for Plaintiff and Respondent.